# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRAKEDIS STINSON, | 1:09-cv-00213-OWW-SMS (HC) |
|       Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
|   v. | |
| JAMES D. HARTLEY, | [Doc. 1] |
|       Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following his conviction in 1981 for first degree murder. He is serving a sentence of 25 years to life.

In the instant petition, Petitioner does not challenge the validity of his conviction; rather, he challenges the Governor's 2005 decision denying him parole. He contends the Governor's decision violated his due process rights.

In 2005, Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court. (Exhibit A, to Answer.) The superior court denied the petition finding in a reasoned decision that there was some evidence to support the Governor's decision. (Exhibit D, to Answer.)

1

Petitioner then raised his claims to the California Court of Appeal and California Supreme Court. (Exhibits E, F, G & H, to Answer.) The Court of Appeal denied the petition in a reasoned decision, stating that "based on the record that is submitted there is some evidence to support the challenged decision." (Exhibit F.) The California Supreme Court summarily denied the petition. (Exhibit H.)

Petitioner filed the instant petition for writ of habeas corpus on February 3, 2009. (Court Doc. 1.) Respondent filed an answer to the petition on May 27, 2009, and Petitioner filed a traverse on June 22, 2009. (Court Docs. 12, 13.)

## STATEMENT OF FACTS[1]

On September 9, 1980, Petitioner and three accomplices robbed a market at gunpoint. During the robbery, one of Petitioner's accomplices shot the store clerk in the head, killing him. Petitioner also shot the customer he was holding at gunpoint when he made a movement toward the clerk, striking him in the side. One of the accomplices emptied the cash drawer, and the group fled the scene. Although the store clerk died, the customer was treated for his injuries and survived.
(Exhibit D, to Answer.)

## DISCUSSION

I.    Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

---

[1] This information is taken from the Los Angeles County Superior Court's decision. (Exhibit D, to Answer.)

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a

set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

At the 2005 hearing, the Board found that Petitioner was suitable for release on parole. However, Governor Schwarzenegger reversed the Board's decision based on his review of the circumstances of the commitment offense, institutional behavior, prior lack of insight, and questionable parole plans.

In the last reasoned decision of the California Court of Appeal, Second Appellate District, the Court found that the Governor's reversal of the grant of parole to be supported by some evidence. (Answer, Exhibit F.) In rendering its decision, the court stated the following:

> The court has read and considered the petition for writ of habeas corpus filed November 6, 2007. The petition is denied. Petitioner fails to submit the complete record referenced by the Governor in reaching his decision. (*People v.*

4

*Duvall* (1995) 9 Cal.4th 464, 474.) In addition, based on the record that is submitted, there is some evidence to support the challenged decision. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 664-665.)

(Answer, Exhibit F.)

II. Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied.

Article 5, section 8(b) of the California Constitution, allows the Governor to review the decision of the Board and enables him to affirm, modify, or reverse the decision on the basis of the same factors that the Board is required to consider. See Cal. Const. art. 5, § 8(b); In re Rosenkrantz, 29 Cal.4th 616, 660 (2002). The Governor must consider the same factors as the Board in determining whether to affirm or reverse the Board's decision. Id. However, the Governor may weight those factors differently than did the Board. 15 Cal. Code Regs. § 2402(c) & (d). Accordingly, the Governor's decision to reverse a parole grant is reviewed under the same due process principles utilized to review the Board's denial of parole.

The California Supreme Court clarified the standard of review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (2008). The applicable standard "is whether some evidence supports the *decision* of the Board or the Governor that the

inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." Id. at 1212 (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.[2]

In finding Petitioner unsuitable for release on parole, the Governor relied on the circumstances of the commitment offense, trivial motive, institutional misconduct, and questionable parole plans. (Exhibit A, to Answer, Attachment 1.)

With regard to the circumstances of the commitment offense, Governor Schwarzenegger found that it was carried out in a dispassionate and calculated manner and multiple victims were involved.[3] Petitioner was 18 years old at the time of the commitment offense and was an admitted member of the East Coast Crips gang. (Id. Attachment 2, at 12, 20.) On September 9, 1980, Petitioner and his crime partners robbed a market and committed the brutal murder of store-owner, Carlos Granados, in front of his wife and customers. (Id. at 10-12.) Petitioner held

---

[2] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (2008) (citing Lawrence, 44 Cal.4th at 1213-1214.)

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
 (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
 (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
 (C) The victim was abused, defiled or mutilated during or after the offense.
 (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
 (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

7

customer, Fernando Arrellano, at gunpoint, while one of his crime partners held a gun to the head of Mr. Granados. When Mr. Granados made a movement, Petitioner's crime partner shot him in the head. As Mr. Arrellano ducked and started to move toward Mr. Granado's wife, Petitioner shot him, striking him in the side. Then, one of Petitioner's crime partners emptied the cash register and they all fled the scene in the getaway car, while the two victims were lying on the floor bleeding. Mr. Granado died before emergency personnel arrived. Mr. Arrellano was taken to the hospital for his injuries and survived. (Id. at 10-15.) Thus, the offense was committed in a calculated and dispassionate manner. Petitioner and his accomplices clearly planned to rob the market, as they were armed and had a getaway car waiting for them outside. The shootings were committed solely for the purpose of furthering the robbery and avoiding punishment. These acts were deliberate, calculated, and dispassionate. Contrary to Petitioner's statement at the hearing, the record supports the finding that the robbery was well-planned rather than a spur-of-the-moment incident, as four members of the gang were involved with one waiting outside in a getaway car.

In addition, there is some evidence to support the Governor's finding that multiple victims were involved and the motive was very trivial. There was no evidence that either victim posed any threat or provoked them group in any way prior to the robbery. Thus, obtaining the paltry sum of $100 was extremely trivial in relation to killing one man and causing serious injury to another.

The Governor also considered Petitioner's institutional misconduct which supports the finding of unsuitability. Petitioner's record consists of nine serious rules violations (CDCR 115's), including one for threatening to assault a correctional officer, and several others for disobeying direct orders.[4] 15 Cal. Code Regs. § 2402(c)(6). The Governor commended Petitioner for remaining disciplinary free for the last 14 years, however, he found that his misconduct during the first decade of his incarceration could not be overlooked and remained indicative of his present dangerousness. Given the fact that at the time of 2005 hearing Petitioner had not yet served his minimum term and suffered multiple rules violations during the first decade of

---

[4] A CDCR-115 documents misconduct which is a violation of law or which is not minor in nature. 15 Cal. Code. Regs. §§ 3312(a)(2), (a)(3).

8

imprisonment, there is some evidence to support the Governor's finding that his institutional misconduct renders him a current threat to public safety if released. That said, there will no doubt come a point in time when Petitioner's commitment offense and institutional misconduct will no longer be predictive of his present dangerousness, however, the Court simply cannot make that finding based on the record before it.

Although not factors, alone, that would support a finding of unsuitability, the Governor was also concerned about Petitioner's delay in gaining insight into the circumstances of the offense, and parole plans to return to the same gang infested neighborhood he resided at the time of the offense. These circumstances were properly considered by the Governor. See 15 Cal. Code Regs. § 2402(b) ("Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.") Petitioner became involved in the East Coast Crips gang at the age of 16 and was an active member of that gang at the time of the commitment offense. The gang was active in the neighborhood where he resided with his mother and siblings. The fact that he intends to return to that very same neighborhood which is prevalent with East Coast Crips gang members, was a legitimate concern to the Governor. Indeed, the Governor pointed out that after the 2005 hearing, a parole agent investigated Petitioner's parole plans, and although he found the offer was suitable, he also noted that the East Coast Crips were very active in the community where Petitioner's mother resides." (Exhibit 1, Decision at 3.) The Governor was reasonably concerned that Petitioner's residency with his mother is somewhat problematic given his prior association and residency in the neighborhood among the very same gang.

The Governor also found that given Petitioner's "lack of insight for many years, his current claims of acceptance of responsibility and remorse do not weigh in favor of his parole." (Exhibit 1, Decision at 3.) In rendering this finding, the Governor relied on out-dated evidence dating back as far as 1981-which does not appear to be supported by the record in 2005. However, even if this factor is not supported by some evidence, it is immaterial because as explained *supra* there is other independent evidence to support the Governor's decision.

1    In addition, at the time of the 2005 hearing, Petitioner had been incarcerated for only 24
2 years on his 25 years-to-life sentence. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003),
3 the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the
4 circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative
5 goals espoused by the prison system and could result in a due process violation." Although a
6 denial of parole initially can be justified by relying on the gravity of the offense, over time,
7 "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation,
8 denying him a parole date simply because of the nature of [his] offense and prior conduct would
9 raise serious questions involving his liberty interest in parole." Irons v. Carey, 505 F.3d 846, 853
10 (9th Cir. 2007), *citing* Biggs, 334 F.3d at 916. Nevertheless, in both Irons and Biggs, the Ninth
11 Circuit upheld the denials of parole based solely on the commitment offense because, as in this
12 case, the petitioners had not yet served the minimum term. At the time of the 2007 hearing,
13 Petitioner had served just over 24 years on a 25 years-to-life sentence. Accordingly, the due
14 process concerns expressed in Biggs and Irons are not yet implicated, and Petitioner's claim to the
15 contrary should be rejected. In addition, Petitioner has not been denied parole forever; rather, the
16 Board stated that he would be considered again in one year. Moreover, the Governor's finding of
17 unsuitability was not limited solely to the circumstances of the commitment offense.
18    In rendering his decision, the Governor also considered the factors in support of suitability
19 pursuant to 15 Cal. Code Regs. § 2402(d). The Governor commended Petitioner for earning his
20 GED, completion of the Professional Small Business Management Program, Emergency
21 Management Institute, and college courses. Petitioner also received vocational training in mill
22 and cabinet, and has held several institutional jobs. It was further noted that Petitioner had
23 participated in several self-help programs, and had maintained supportive relationships with his
24 family. (Exhibit A, to Answer, Attachment 1, at p.3.) However, on balance, the Governor
25 concluded that these positive factors did not outweigh the factors of unsuitability.
26    In conclusion, the Governor cited several grounds which taken together reflect that
27 Petitioner remains a present risk to public safety if released. Accordingly, the state courts'
28 determination of this issue was not contrary to, or an unreasonable application of, clearly

established Supreme Court precedent. Nor was it an unreasonable determination of the facts in light of the evidence before it. 28 U.S.C. § 2254(d).

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   March 5, 2010**                /s/ Sandra M. Snyder
                                         UNITED STATES MAGISTRATE JUDGE